Marlen E. Pew, Jr., and Abby B. Pew v. Commissioner.
Pew v. Commissioner
Docket No. 70069.
United States Tax Court
T.C. Memo 1961-264; 1961 Tax Ct. Memo LEXIS 85; 20 T.C.M. (CCH) 1377; T.C.M. (RIA) 61264; September 20, 1961
*85 Marlen E. Pew, Jr., pro se, Rt. 79, North Madison, Conn. Chalres M. Greenspan, Esq. for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In this proceeding deficiencies in income tax and additions to tax were determined as follows: Additions to tax - I.R.C. 1939
Sec.
Sec. 294
Sec. 294
Year
Deficiency
293(b)
(d)(2)
(d)(1)(A)
1952
$41,259.00
$20,629.50
$2,833.08
$4,249.62
In computing the alleged deficiency, respondent increased petitioners' reported income by $28,699, disallowed all of petitioners' reported business expenses in the amount of $35,747.43, and disallowed two claimed exemptions for dependents. By subsequent stipulation, petitioners conceded an item of $7,500 claimed as having been spent for "newspaper mats" and $3,000 of $9,918.22 claimed for travel and entertainment. Respondent does not now contest the remaining travel and entertainment expenses and has apparently abandoned all proposed additions to tax except that for fraud under section 293(b). The only issues now remaining for our consideration are: (1) Whether respondent correctly determined that certain moneys received *86 by petitioners constituted taxable income and, if so, whether petitioners are entitled to an offsetting deduction upon the subsequent disbursement of these same moneys; and (2) whether the addition to tax under section 293(b) of the 1939 Code was properly imposed. Findings of Fact Some of the facts are stipulated and are so found. Petitioners filed a joint Federal income tax return for 1952 with the director of internal revenue for the third district of New York. Petitioner Marlen E. Pew, Jr., hereinafter called petitioner, is 48 years old. His formal education includes 2 years at college level and he has had experience in the fields of journalism and public relations. In 1950, petitioner established his own public relations business under the name of Marlen Pew Associates, located during the taxable year 1952 at 270 Park Avenue, New York, New York. During the taxable year, he acted as a consultant on merchandising, public relations, and advertising for the company of Peter Paul, Inc., Naugatuck, Connecticut, hereinafter called Peter Paul. During the year 1952, petitioner was engaged in promoting a special recipe service for Peter Paul. In this connection he was entitled *87 to commissions and incurred expenses for which he would periodically bill Peter Paul and would, in turn, receive checks from Peter Paul which he deposited in his personal bank account. During the taxable year 1952, pursuant to this arrangement, petitioner received approximately $60,000 from Peter Paul. The bills sent by petitioner to Peter Paul were knowingly rendered in an amount in excess of that to which he was entitled, pursuant to the direction of one Elliott W. Plowe, hereinafter called Plowe, who was employed by Peter Paul as manager of its advertising department and who was supervisor of petitioner's work. The agreement between petitioner and Plowe called for petitioner to pay the excess billings to Plowe. Petitioner's reported gross income of $59,259.33 for 1952 was $28,699 less than actual receipts. Payments by petitioner to Plowe, pursuant to the previously described arrangement through his personal checking account, totalled $26,899 in the taxable year. In the petition, petitioner referred to these payments as being made to a "merchandising expert" for the purpose of securing additional business. Later, in an affidavit filed with respondent, which was also substituted *88 for a portion of the petition, he admitted that this was false and stated that the payments were made to Plowe pursuant to their agreement. Petitioner understated his income for 1952 by $1,800. No part of the deficiency is due to fraud with intent to evade tax. Opinion Petitioner was required by his client's advertising manager to pad his invoices and return the excess. At the time, he considered this to be with the knowledge and possibly for the benefit of the client's president - a conclusion he has since revised. The choice seems to have been between submitting to the "kickback" or losing the account. Perhaps he should have chosen the latter, but it is not the province of this opinion to pass judgment on the morality of the transaction unless that becomes necessary for the determination of petitioner's tax liability. . The primary [1] position of petitioner, who, though not a lawyer, represented himself, appears to be that the sums in question were not includible in his gross income. While not free from doubt, we think this is correct. They may have been part of his gross receipts, see , *89 appeal dismissed (C.A. 5, Feb. 20, 1950), but under all the circumstances, they were not his income even though they passed through his hands. ; , appeal dismissed (C.A. 3, Apr. 17, 1957); Atzingen-Whitehouse Dairy, Inc., 36 T.C. - (Apr. 27, 1961); see . In many respects the present situation is similar to Petitioner had an agreement with the responsible agent of his client that all he was to receive for his services and expenses was the net amount which he actually retained. The difference was not his income here any more than the agreed rebate on the price of milk was income to the petitioner in the Pittsburgh Milk case. The amount of the "kickbacks" paid by petitioner under the circumstances described appears *90 to have been $1,800 less than his original claim. His traveling expenses were unsubstantiated to the extent of $3,000 and an item of $7,500 deducted for "newspaper mats" was conceded by him at the trial. With the exception of these adjustments, the deficiency in tax is disapproved. Respondent has now conceded all additions to tax except that for fraud under section 293(b) of the 1939 Code. Under all the circumstances, we think he has entirely failed to sustain his burden of proving that any part of the deficiency was due to fraud with intent to evade tax. This aspect of the determination is likewise disapproved. Decision will be entered under Rule 50. Footnotes
1. "THE COURT: He has a claim which might take either one of two forms. It wasn't his income when he got it or if it was, he had an offsetting deduction. I assume that is it. "MR. PEW: I believe my position is the first view you expressed, it was not my money."↩